IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

|  |  |
|---|---|
| CHRISTIE L. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 6:12-cv-00633-JO |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner ) of Social Security, ) | OPINION AND ORDER |
| ) | |
| Defendant. ) | |

JONES, J.,

Claimant Christie Williams appeals the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), and denying her application for supplemental security income under Title XVI of the Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

**PRIOR PROCEEDINGS**

Williams filed a Title II application for disability insurance benefits, and a Title XVI application for supplemental security income. In both applications, Williams alleged disability beginning September 18, 2006. Williams acquired sufficient quarters of coverage to remain

1 – OPINION AND ORDER

insured through March 31, 2009, and must establish that she was disabled on or before that date to prevail on her Title II claim. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Williams claimed disability from a history of recurrent deep vein thrombosis, morbid obesity, headaches, cervical and lumbar degenerative disc disease, diabetes, hypothyroidism, sleep apnea, major depressive disorder, anxiety, attention deficit hyperactivity disorder (ADHD) and dependent personality disorder. The Commissioner denied these claims.

Williams appeared and testified at an administrative hearing before an ALJ. Applying the sequential disability determination process described in 20 C.F.R. § 404.1520 and § 416.920, the ALJ determined that Williams's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not wholly credible. Admin. R. 24. The ALJ found that Williams had the residual functional capacity ("RFC") to perform sedentary work with some restrictions, that Williams had not been under a disability as defined in the Act, and therefore denied both of Williams's applications on February 23, 2011.

## STANDARD OF REVIEW

The Social Security Act provides for judicial review of final decisions of the Commissioner of Social Security. 42 U.S.C. § 405(g). The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is such relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *See also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) ("Substantial evidences means more

2 – OPINION AND ORDER

than a scintilla, but less than a preponderance.") (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *and Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)) (internal citations omitted). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Claims of Error.

First, Williams contends that the ALJ improperly rejected her subjective pain and limitation testimony as lacking credibility. Second, Williams contends that the ALJ failed to properly consider the medical evidence; specifically that of Williams's primary treating physician, Maggie King, MD, as well as John Laney, PhD. Third, Williams contends that the ALJ erred by incorrectly reflecting her limitations in the proposed hypothetical to the vocational expert. Williams asks the court to remand for an award of benefits. In the alternative, Williams requests that the court remand to allow the ALJ to more fully develop the record and correct these alleged errors.

#### A. Credibility Determination.

In her disability report, Williams alleged she became disabled on September 18, 2006, when she could no longer walk due to a degenerative disc disease in her neck. Admin. R. 159, 161. She had surgery to correct this in October 2006. Admin. R. 48. She said that she cannot lift more than 20-25 pounds, that her legs and feet swell when she sits too long, and that her hips and legs hurt when she walks or stands for too long. Admin. R. 159, 225. She also said that she

3 – OPINION AND ORDER

suffers from depression, that she gets frequent migraines, and that she has trouble concentrating and remembering things. Admin. R. 159.

At the administrative hearing, Williams testified that the biggest obstacles to her working are her depression, migraines, anxiety, and inability to sit in a chair for more than two hours. Admin. R. 51. Williams said her anxiety sometimes causes her to not know how to act around people, and she does not take criticism well. Admin. R. 57. She claimed that her hip hurts when she sits for extended periods of time, and that she needs to stand once an hour to relieve it. Admin. R. 55. Williams also testified that she is taking all of her medications in the manners in which her doctors prescribed. Admin. R. 63.

The ALJ accepted some of Williams's statements. For example, the ALJ limited Williams to sedentary work, Admin. R. 23, which involves lifting no more than 10 pounds at a time. 20 C.F.R. § 404.1567(a). The ALJ further lowered the posturals for climbing ladders, ropes, and scaffolds, from "occasional" to "never." Admin. R. 23. Due to her inability to concentrate, the ALJ limited her to simple routine and repetitive tasks with a reasoning level of no greater than reasoning level 2. Admin. R. 23. Lastly, the ALJ determined that Williams should have only occasional interactions with the public and coworkers because of her anxiety. Admin. R. 23. The ALJ found Williams was not fully credible, however, regarding the limiting effects of her symptoms, in particular, her alleged inability to work. Admin. R. 24.

The ALJ is "responsible for determining credibility." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). To determine whether a claimant's subjective pain testimony is credible, the ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ found that Williams satisfied the first step by providing

4 – OPINION AND ORDER

objective medical evidence that could reasonably support her symptoms. *See id*; Admin. R. 24 ("Medical evidence does reveal [Williams] has been diagnosed with the above-mentioned impairments, which are likely to cause some limitations."). Absent evidence of malingering, the ALJ can only reject Williams's subjective testimony about the limiting effects of her symptoms by offering "specific, clear and convincing reasons" for doing so. *Id.* The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti*, 533 F.3d at 1039.

When weighing a claimant's credibility, "the ALJ may consider [her] reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [she] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ's decision demonstrates that he closely considered all the evidence relating to the proper factors for evaluating credibility. After discussing the medical evidence at length, the ALJ arrived at a sedentary RFC to accommodate some of claimant's alleged conditions. Admin. R. 23. But in light of her non-compliance with treatments, inconsistent pain reporting, and evidence that her residual functional capacity is higher than she alleged, the ALJ could not find Williams fully credible. Admin. R. 30. These are specific, clear and convincing reasons for rejecting Williams's subjective testimony.

The ALJ found that Williams was "non-compliant with medical treatment for nearly every impairment." Admin. R. 30, 266. The "case law is clear that if a claimant complains about a disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain,

5 -- OPINION AND ORDER

an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

With respect to obesity and spinal impairments, Williams has failed to lose weight, exercise, or undergo bariatric surgery in spite of doctors' recommendations. Admin. R. 409, 662-63, 676. Williams also is regularly noncompliant with her diabetes, migraine, and depression medication. Admin. R. 25-27. She does not utilize her sleep apnea C-PAP machine. Admin. R. 31, 663. Lastly, she has not sought regular counseling, again in spite of doctors' recommendations. Admin. R. 399, 429-30. While this evidence is not decisive as to Williams's credibility, the ALJ should consider non-compliance when making a credibility determination. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *See also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (finding that "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" discredits an allegation of pain).

The ALJ also notes that Williams inconsistently reports the extent of her pain. In July 2010, Williams alleged having two migraines per week. Five months later, in December 2010, Williams alleged having "almost daily migraines." Admin. R. 688. While this is a plausible development, Williams's prescription drug use does not track the level of pain she alleges. For example, Williams only filled up her prescription migraine medication six times in 2010, totaling 54 pills. 54 pills for an entire year do not correspond with someone who has two migraines per week, let alone someone who has daily migraines. Williams admits that her migraine medication, Imitrex, is helpful. Admin. R. 663. Imitrex does not have a copayment so ability to pay for the medication was not at issue. Under these circumstances, it was reasonable for the ALJ to conclude that a person having daily migraines would use more medication.

6 – OPINION AND ORDER

This same pattern of inconsistent reporting and inability to follow medical orders repeats itself for all of Williams's alleged ailments. Admin. R. 24. Williams explained that her problems result from her "trouble . . . remembering to do things," including taking her medication. Admin. R. 204. But Williams's husband's testimony does not fit this claim. Claimant's husband talks to Williams 2-3 daily when he is out of the house, and reminds her to take her medication each time. Admin. R. 171. Further, when Mr. Williams returns home at 2pm every day, he again supervises her medication intake. Admin. R. 76. It seems unlikely that claimant's inability to remember to take her medication would be a significant obstacle with multiple reminders each day.

A further showing of inconsistency is Williams's testimony at the administrative hearing that she cannot sit for more than an hour at a time because of pain in her hips. Admin. R. 55; *see also* Admin. R. 211. As the ALJ points out, Williams drove 2-3 hours to the ALJ hearing without having to get out of the car. Admin. R. 30. Further, Williams herself admitted previously at the administrative hearing that she is able to sit in a chair for two hours. Admin. R. 51.

The ALJ also considered the question of whether Williams's lack of compliance with her medication is "merely a symptom of a debilitating depression." Admin. R. 31. After carefully reading the medical evidence (as will be discussed more below), the ALJ found that when claimant's depression was under control, she still was non-compliant with her medication. Admin. R. 31. Thus, the ALJ was justified to conclude that the severity of her depression is not to be the only factor affecting Williams's ability to comply with medical regimens.

The ALJ closely inspected each of Williams's subjective pain allegations and weighed these against her history of non-compliance with medication and inconsistent reporting. The ALJ

7 – OPINION AND ORDER

was reasonable in his assessment of the evidence and presented clear and convincing reasons to discount Williams's credibility.

B.   Medical Opinions.

The ALJ "is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041. If an ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, an ALJ "must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (internal quotations omitted). The ALJ meets this burden if he sets out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. Here, the ALJ's exhaustive consideration of claimant's medical evidence meets this burden.

Williams passively disagrees with the ALJ giving "limited weight" to the opinion of claimant's examining doctor, John Laney, PhD, who stated that Williams was not capable of handling average sedentary work. Claimant's Br. 12-13; Admin. R. 28, 496. The ALJ was justified to discount Dr. Laney's opinion because it was based entirely on claimant's self-reporting. Tr. 28; *See Fair*, 885 F.2d at 605 (explaining that a specific, legitimate reason to disregard a physician's opinion is if it is premised on properly discounted subjective complaints).

Further, the ALJ found Dr. Laney's conclusion that Williams "would not be capable of handling an average sedentary workday and would likely run into problems getting along with coworkers and supervisors," inconsistent with other medical evidence. *Compare* Admin. R. 496, *with* Admin. R. 511, 563, 587. In particular, the ALJ weighed Dr. Laney's opinion against that of

8 – OPINION AND ORDER

Michelle Whitehead, PhD. Admin. R. 587-89. Dr. Whitehead reviewed Dr. Laney's examinations, as well as other medical records that were not available to Dr. Laney, and concluded that Williams is capable of performing at the RFC level the ALJ arrived at. Admin. R. 29, 588. And contrary to Williams's assertion that only Dr. King and Dr. Laney considered the combined effects of her physical and mental conditions, Claimant's Br. 12-13, it appears that Dr. Whitehead also did this. Admin. R. 588.

Williams also argues that the ALJ improperly rejected the opinion of her primary treating physician, Dr. King. Dr. King treated Williams from 2006 through 2007. Dr. King wrote three letters – dated October 2007, January 2008, and February 2009, respectively – stating her belief that Williams is "totally disabled" and unable to work. Admin. R. 590-92. Specifically, Dr. King wrote that it is chiefly Williams's depression, which contributes to her not taking her other medications, that makes her incapable of keeping a regular work schedule. Admin. R. 591. The ALJ considered Dr. King's opinion and chose to afford it "little weight." Admin. R. 28. The ALJ was reasonable to do this.

Williams argues that because Dr. King was her treating physician, her opinion deserves controlling weight. Claimant's Br. 13. But Dr. King's, as well as Dr. Laney's, statements on issues reserved to the Commissioner are "never entitled to controlling weight or special significance." SSR 96-5p. Though the adjudicator must evaluate opinions from medical sources about issues reserved to the Commissioner, it remains "the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id.* The ALJ did evaluate Dr. King's opinion, as well as Dr. Laney's, and presented specific, legitimate reasons to afford them little weight.

The ALJ discounted Dr. King's opinion because (1) Dr. King had not treated claimant since June 2007; (2) her treating notes did not support her conclusions; (3) the basis of her conclusions did not make sense; (4) disabling mental issues are not her practice area or specialty; (5) she based her opinion on the deeply flawed opinion of Dr. Laney; and (6) the totality of medical evidence contradicts her opinion. Admin. R. 28. These are "specific, legitimate reasons" for giving limited weight to Dr. King's opinion.

First, it was reasonable to discount Dr. King's opinion on Williams's disability, as her letters were written well after she had last seen Williams. In a letter dated 18 months after Williams's last visit, Dr. King admits that "she cannot comment on how the last several months have been for [Williams]." Admin. R. 591.

Second, and significantly, Dr. King wrote in her treating notes that Williams is unable to stand longer than 15 minutes at a time, and cannot lift greater than 20 pounds. Admin. R. 426. This later finding is consistent with the sedentary RFC the ALJ determined for Williams. Admin. R. 23. The ALJ was justified to conclude that this finding does not support Dr. King's eventual conclusion that Williams is unable to work.

It was also reasonable for the ALJ to afford Dr. King's opinion less weight because psychiatry is not her area of expertise. Though Dr. King is certainly "qualified to give a medical opinion as to [a patient's] mental state as it relates to her physical disability even though [Dr. King] is not a psychiatrist," *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), this does not mean her opinion should be given controlling weight. As discussed above, a treating physician's opinion of a claimant's statutorily defined disability is "never entitled to controlling weight." SSR 96-5p. The ALJ was correct to weigh Dr. King's psychiatric diagnosis against

10 – OPINION AND ORDER

other medical evidence, particularly Dr. Whitehead, who found that claimant was only moderately limited by her depression. Admin. R. 587-589.

The ALJ was also correct to question Dr. King's reliance on Dr. Laney's medical opinion that claimant was disabled. Admin. R. 590. For the reasons discussed above, Dr. Laney's opinion was properly discounted by the ALJ.

Lastly, Dr. King's, as well as Dr. Laney's, belief that Williams is unable to perform sedentary work, is contradicted by a substantial amount of the medical record. Michael Henderson, MD, for example, believes that Williams should be able to stand for two hours, walk for one hour, and sit without restriction during an eight hour work day. Admin. R. 706. Pat Chan, MD, opined that claimant could sit for six hours and stand and/or walk for two hours in a given work day. Admin. R. 542. Sharon Eder, MD, echoes this sentiment. Admin. R. 452. In regards to patient's mental limitations, Keith Bauer, PhD, and Michael Mandli, PhD, both maintain that claimant is only moderately limited in activities of daily living, maintaining social functioning and maintaining concentration. Admin. R. 511, 563. This medical evidence is consistent with the ALJ's final disability determination, and provides specific, legitimate reasons to discount both Dr. King's and Dr. Laney's opinions.

After weighing the medical evidence, the ALJ was justified in affording Dr. King and Dr. Laney little weight when determining claimant's disability. The ALJ offered specific, legitimate reasons for doing so, and was reasonable in his conclusions. As "the final arbiter with respect to resolving ambiguities in the medical evidence," *Tommasetti*, 533 F.3d at 1041, the ALJ's decision regarding the medical evidence is affirmed.

C. <u>Vocational Expert.</u>

Once a claimant shows that she cannot perform past relevant work, as the ALJ concluded with Williams, "the burden shifts to the Secretary to show the claimant can engage in other substantial gainful activity." 20 C.F.R. § 416.920(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). "The Secretary can meet this burden by propounding to a vocational expert a hypothetical that reflects all the claimant's limitations." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). An ALJ's hypotheticals to a vocational expert ("VE") "must include all of the claimant's functional limitations, both physical and mental supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (internal quotations omitted). The ALJ is "free to accept or reject" restrictions posed in the hypotheticals "as long as they are supported by substantial evidence." *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).

Here, the ALJ elicited testimony based on Williams's RFC assessment. The VE testified that unskilled sedentary occupations with occasional posturals, simple routine, repetitive tasks with no greater reasoning level than level 2, such as surveillance system monitor and assembler of small products, represent thousands of jobs regionally, and hundreds of jobs in the Oregon area. Admin. R. 84. The ALJ relied on that testimony to conclude that Williams retained the RFC to perform work that exists in significant numbers in the national economy.

Williams contends that the ALJ did not accurately reflect her limitations in the proposed hypothetical to the VE. Williams argues that the ALJ ignored her and Dr. King's testimony, saying that she would miss an unacceptable amount of work due to her impairments.

The evidence was properly evaluated and the ALJ included the limitations he found supported by the record. While the evidence is susceptible to an interpretation more favorable to

12 – OPINION AND ORDER

Williams, that is not a basis to overturn the ALJ's decision. *Batson*, 359 F.3d at 1193, 1198 (9th Cir. 2004).

## CONCLUSION

The ALJ properly determined that Williams's has multiple impairments, but that these impairments do not preclude her from engaging in all basic work activity. Williams is therefore not disabled within the meaning of the Social Security Act and not entitled to Supplemental Security Income. 42 U.S.C. § 405(g). I AFFIRM the Commissioner's final decision.

DATED this 31st day of July, 2013.

Robert E. Jones, Senior Judge
United States District Court

13 – OPINION AND ORDER